[Crim. No. 2787.   First Dist., Div. Two.   Feb. 11, 1952.]

THE PEOPLE, Respondent, v. ROY HOBBS, Appellant.

Marcollo, Cannelora & Marcollo and Calfee, Gregg, Moses & Calfee for Appellant.

Edmund G. Brown, Attorney General, and David K. Lener, Deputy Attorney General, for Respondent.

JONES, J. pro tem.—The defendant in this action stands charged by an amended information with a violation of section 288 of the Penal Code committed against a 12-year-old school child.   He is also charged with prior convictions of grand theft in Missouri and burglary in Idaho.   Both prior convictions were admitted but a plea of not guilty was entered

to the principal charge. The jury returned a verdict of guilty, and defendant has appealed from the judgment and from the order denying his motion for a new trial.

The only ground urged for a reversal of the judgment is that the evidence is insufficient to sustain the verdict. Appellant contends that the acts committed by him do not come within the purview of said section 288 and that no offense was committed.

Section 288 provides that: ''Any person who shall wilfully and lewdly commit any *lewd* or *lascivious* act including any of the acts constituting other crimes provided for in part one of this code *upon* or *with* the body, or any part or member thereof, of a child under the age of fourteen years, with the intent of arousing, appealing to, or gratifying the lust or passions or sexual desires of *such person* or of *such child* shall be guilty of a felony. . . .'' (Italics added.)

The act is alleged to have been committed on the 8th day of June, 1951. The defendant contends that his actions as disclosed by the record were neither lewd nor lascivious, his contention being that at all times he conducted himself only in a fatherly manner toward the child.

On June 8th, he met the girl by appointment in front of a café about one and one-half blocks from her home. According to his version his object was to take her to school. He was driving a yellow pickup truck at the time. Upon meeting him the girl climbed into the cab of the pickup and they drove to a spot about a block from the school where he stopped and parked. He then changed places with her on the seat of the truck. The child testified: ''Q. And when the truck was stopped, what happened if anything? A. Well, he started kissing me. Q. And by 'he' who do you mean? A. Roy Hobbs. Q. Go ahead. What else happened there? A. Well he just started kissing me and this truck driver came by and he yelled something in the window, and at that time we were laying in the seat. Q. Pardon? A. We were laying in the seat at that time. Q. You say you were laying down in the seat. Do you mean both of you? A. Yes sir. Q. You say some truck driver came by, is that right? A. Yes sir. Q. And what were you doing during this time? A. I was kissing him back. . . . Q. Do you remember him saying anything to you about loving you or going away with you, while you were on the truck? A. Yes sir, I do. Q. What did he say, if anything? A. He just told me he loved me, but he didn't mention anything about running away. Q. He didn't say anything

about that at that time? A. Not that morning. . . . Q. When you were laying down on the seat, what happened if anything besides him kissing you and you kissing him? A. He put his hand on my leg. The Court: Will you show us where he put it? The Witness: About here. The Court: On top of your clothing or underneath? The Witness: Underneath. The Court: Underneath? The Witness: Yes sir. The Court: Did you have a dress on? The Witness: A skirt. The Court: A skirt. Did you have any panties on? The Witness: Yes sir. The Court: He put his hand underneath your skirt on top of your panties or under your panties? The Witness: No, he didn't have it that far up. He just had it there. The Court: Had it right there. All right. Q. What prevented him if anything from putting his hand on your privates? A. I did. Q. How did you stop him from doing it? A. I just pushed his hand away. Q. And this all occurred while you were laying down? A. Yes sir. Q. And while he was kissing you at that time? A. Yes sir.''

The witness Thompson testified: ''Q. About how long was the car there, that you know of? A. Well, from about fifteen minutes to 8 to at least fifteen after 8. . . . Q. You said they were embracing and loving each other. Could you tell the jury what they were doing, what you saw, what you meant by that? A. Well, she had her arms around his neck, and he had his arms around her, and they were embracing there, very—well, I wouldn't say—they looked like they were very much in earnest with what they were doing. . . . Q. You said you could see them in the back of the truck there in the seat, and they would fall over, I believe that is what you said, is that right? A. Yes, . . . Q. And when you were watching them when they disappeared from view, was the girl like on top or the bottom, or could you tell? A. She was on the bottom.''

William Kameyer, a carpenter for the Richmond School Department, testified that ''Q. And with reference to the truck, did you see anything? A. I seen two people in there kissing. Q. What else did you see, if anything? A. That is all. They were just up and down all the time. Q. Will you tell the jury what you meant by 'up and down'? A. Well, you could see them once in a while sitting up, and next time they would be laying down on the seat. Q. And did you ride by that yellow truck? A. Yes sir, I did. Q. And what did you do when you rode by there? A. I yelled and asked him what he thought he was doing.''

Henry Coate, another employee of the school district, testified that he too saw a man and a lady embracing in a very passionate manner in the truck. The defendant had driven the child to school on other occasions and on three separate occasions met her in a theatre where on each occasion he kissed her. These clandestine meetings continued over a period of about three weeks.

Counsel for appellant in support of the argument that the act of the defendant in lying on top of the girl on the seat of the truck embracing and kissing her passionately, and placing his hand on her leg beneath her clothing and reaching for her private parts does not come within the purview of the statute has assembled and presented a voluminous list of cases in which acts of degradation were involved. ■ It is urged that these cases in which a degraded act was made the basis of the charge establish the standard by which it is to be determined whether an act is lewd or lascivious. It is contended that if the act is not obscene it is neither lewd nor lascivious. This is not the rule.

■ Section 288 of the Penal Code was enacted to protect children from the lustful advances and tamperings of callous and unscrupulous persons as well as from the assaults of depraved unfortunates. ■ In all cases arising under this statute the purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done. In *People* v. *Owen,* 68 Cal.App.2d 617, 620 [157 P.2d 432], it is said that ''It is not the accomplishment but the intent of the party that is the basis of the commission of the acts condemned in Penal Code section 288.'' If intent of the act, although it may have the outward appearance of innocence, is to arouse, or appeal to, or gratify the lust, the passion or the sexual desire of the *perpetrator* it stands condemned by the statute, or, if it is intended to arouse feelings of passion or sexual desire in the *child,* it likewise stands condemned. The intent with which the act is done is manifested by the circumstances under which it was committed. (Pen. Code, § 21.) As is said in *People* v. *Owen, supra,* each case involving a lustful advance upon a child ''must be decided by the evidence introduced and is not necessarily controlled by a previous decision.''

■ The probative force of the evidence in this case is so strong that it obviates any inference that the defendant had any other object than to arouse passion and sexual desire in the child and to gratify his own lust. Not only is the evidence

amply sufficient to sustain the verdict but it negates appellant's further contention that it is insufficient to establish his guilt beyond a reasonable doubt.

The judgment and the order denying the motion for a new trial are each affirmed.

Nourse, P. J., and Goodell, J., concurred.