[No. H021790. Sixth Dist. Apr. 15, 2003.]

THE PEOPLE, Plaintiff and Respondent, v.
JAMES MARCELLOS MURPHY, Defendant and Appellant.

**COUNSEL**

Walter K. Pyle, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Laurence K. Sullivan and John H. Deist, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELIA, J.**—James Marcellos Murphy appeals from the judgment of conviction of oral copulation by force or fear (Pen. Code, § 288a)[1] and felony false imprisonment (§§ 236, 237) that followed a jury trial. The court sentenced defendant Murphy to total term of six years, consisting of a six-year principal term and a two-year concurrent term.

[1]All further statutory references are to the Penal Code unless otherwise stated.

On appeal, defendant Murphy claims that use of a one-way glass during the alleged victim's testimony violated his constitutional rights to confrontation and due process, the court prejudicially erred by excluding evidence of a tape recorded telephone conversation between defendant and the alleged victim, and the court should have stayed the sentence on the false imprisonment count rather than ordered it served concurrently (see § 654).

Defendant asserts that the trial court's decision to allow the use of a one-way glass during a portion of the testimony of the alleged victim, an adult, violated his Sixth Amendment right of confrontation. The glass prevented the witness from seeing the defendant while she testified but permitted the jury and the defendant to observe her demeanor.

Sydney Doe, the alleged victim, began testifying in the afternoon accompanied by a support person (§ 868.5). She indicated she was nervous and, at various times, the prosecutor told her it was okay or he instructed her to take a breath, take her time, or look only at him. The court took a brief recess at one of those points.

The next morning, the prosecutor informed the court that part of the problem for the alleged victim was that she was disturbed by seeing the defendant. The prosecutor requested the court's permission to use a one-way glass that would obscure the witness's view of the defendant. Defense counsel objected to the glass as a violation of defendant's constitutional rights, particularly his right to confront and cross-examine witnesses. Defense counsel asserted that accommodations for children had no application to a 31-year-old adult, even if she were emotionally distressed.

The trial court found: "To say that the victim in this case while testifying is severely emotionally distraught is like saying the ocean is rather damp. She has been engaging in a hyperventilation that we have heard described in other contexts by her cousin. She has been making marked spasmodic motions of her head and neck relating to her breathing abilities, I suspect. She has been crying and sobbing. She has been making 'keening' type noises that at times make it difficult to hear her testimony. [¶] As the record will reflect, we took one or more breaks yesterday just in an effort to try to allow her to feel more comfortable. Again, that's sort of an understatement as well. [¶] A reading of the preliminary hearing transcript would suggest that during that hearing paramedics were required to treat her on the same sort of issues that she has."

The trial court permitted the one-way glass to be used during Sydney's testimony. It explained its decision for the record: "[W]hat I have done is I

have balanced the State's interest, not so much in protecting a sexual assault victim, but the State's interest in getting a full account from a witness in the case, an accusing-witness case. In other words, finding the truth, if that's to be found, and I think the State's interest in getting a full account as opposed to have [sic] a trial aborted or a mistrail [sic] declared or the witness to be found unavailable for testimony for medical reasons, which I think is the likely result if we don't do something here, versus a slight change in what has been a traditional concept of the defendant's right to confront his accuser. Here the defendant is clearly present in the same room, the same distance away, his view of the witness, in my view, is not significantly or constitutional[ly] altered by the slight darkening or having to look through what amounts to a plexiglass window."

The court explained to the jury: "[W]e've arranged for this plastic window device in order to assist a witness' testimony. [¶] Now, the use of this device in no way is connected to improper action on the part of the defendant or his attorney in or out of court. [¶] Of course, the device itself is not evidence, and should not be considered by you in any way as tending to indicate that the defendant is more likely to be guilty than not guilty."

Even with the screen, the alleged victim had trouble breathing and apparently passed out during cross-examination. The court stated for the record that her illness appeared "related to the anxiety and hyperventilating that she has been displaying periodically or almost continuously during her testimony." The witness was evaluated by paramedics and transported to the hospital. She returned to the courtroom and cross-examination resumed later that same day.

■ The Sixth Amendment of the United States Constitution guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him." The right of confrontation ordinarily requires a face-to-face encounter. (See *Coy v. Iowa* (1988) 487 U.S. 1012, 1016 [108 S.Ct. 2798, 2801, 101 L.Ed.2d 857] ["We have never doubted . . . that the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact"]; *Ohio v. Roberts* (1980) 448 U.S. 56, 63 [100 S.Ct. 2531, 2537, 65 L.Ed.2d 597] ["The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial"]; see also *Mattox v. United States* (1895) 156 U.S. 237, 242-243 [15 S.Ct. 337, 339-340, 39 L.Ed. 409].)

In *Coy v. Iowa, supra,* 487 U.S. 1012, the defendant was "convicted of two counts of lascivious acts with a child after a jury trial in which a screen placed between him and the two complaining witnesses blocked him from

their sight." (*Id.* at p. 1014 [108 S.Ct. at p. 2799].) The screen enabled the defendant to dimly perceive the witnesses and enabled the "complaining witnesses to avoid viewing [Coy] as they gave their testimony . . . ." (*Id.* at p. 1020 [108 S.Ct. at p. 2803].) The United States Supreme Court reversed the judgment, finding that the defendant's "constitutional right to face-to-face confrontation was violated" by the procedure, which was statutorily permitted to be used with child witnesses. (*Id.* at p. 1022 [108 S.Ct. at p. 2803].)

In *Coy,* the Supreme Court stated: "[T]here is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution.' [Citation.] . . . The phrase still persists, 'Look me in the eye and say that.' " (*Coy v. Iowa, supra,* 487 U.S. at pp. 1017-1018 [108 S.Ct. at p. 2801].) The court emphasized the importance of the face-to-face encounter between the accused and the accuser: "The perception that confrontation is essential to fairness has persisted over the centuries because there is much truth to it. A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts. He can now understand what sort of human being that man is.' [Citation.] It is always more difficult to tell a lie about a person 'to his face' than 'behind his back.' In the former context, even if the lie is told, it will often be told less convincingly. The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions." (*Id.* at p. 1019 [108 S.Ct. at p. 2802].)

The court stated: "The State can hardly gainsay the profound effect upon a witness of standing in the presence of the person the witness accuses, since that is the very phenomenon it relies upon to establish the potential 'trauma' that allegedly justified the extraordinary procedure in the present case. That face-to-face presence may, unfortunately, upset the truthful rape victim or abused child; but by the same token it may confound and undo the false accuser, or reveal the child coached by a malevolent adult." (*Coy v. Iowa, supra,* 487 U.S. at p. 1020 [108 S.Ct. at p. 2802].)

The court left the question whether there was any exception to the right to a face-to-face confrontation with a testifying witness for another day. (*Coy v. Iowa, supra,* 487 U.S. at p. 1021 [108 S.Ct. at p. 2803].) The court stated: "Since there have been no individualized findings that these particular witnesses needed special protection, the judgment here could not be sustained by any conceivable exception." (*Ibid.*)

Only a couple of years later, in *Maryland v. Craig* (1990) 497 U.S. 836 [110 S.Ct. 3157, 111 L.Ed.2d 666] the United States Supreme Court considered Maryland's statutory procedure that permitted a child witness, who was

alleged to be a victim of child abuse, to testify against a defendant by means of a closed circuit television under specified circumstances. (*Id.* at pp. 840-842, 851 [110 S.Ct. at pp. 3166-3162].) The court held that "if the State makes *an adequate showing of necessity*, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." (*Id.* at p. 855 [110 S.Ct. at p. 3169], italics added.)

The court reaffirmed the preference for and importance of face-to-face confrontation with testifying witnesses but made clear that the right was not absolute. (*Maryland v. Craig, supra,* 497 U.S. at pp. 849-850 [110 S.Ct. at pp. 3165-3166].) It cautioned: "That the face-to-face confrontation requirement is not absolute does not, of course, mean that it may easily be dispensed with. As we suggested in *Coy,* our precedents confirm that a defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured. [Citations.]" (*Id.,* at p. 850 [110 S.Ct. at p. 3166].)

The court found it significant that the Maryland procedure preserved all other elements of the right to confrontation, namely the requirement that a witness testify under oath, the opportunity for contemporaneous cross-examination, and the opportunity for the triers of fact and defendant to observe the witness's demeanor during testimony. (*Maryland v. Craig, supra,* 497 U.S. at p. 851 [110 S.Ct. at pp. 3166-3167].) It determined that these features were sufficient to assure "reliability and adversariness" and, therefore, the "critical inquiry" was whether the procedure was "necessary to further an important state interest." (*Id.* at pp. 851-852 [110 S.Ct. at pp. 3166-3167].)

The court noted that "a State's interest in 'the protection of minor victims of sex crimes from further trauma and embarrassment' is a 'compelling' one. [Citations.]" (*Maryland v. Craig, supra,* 497 U.S. at p. 852 [110 S.Ct. at p. 3167].) It concluded that "a State's interest in the physical and psychological well-being of child abuse victims may be sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." (*Id.* at p. 853 [110 S.Ct. at p. 3167].)

The court fleshed out the meaning of "an adequate showing of necessity." It stated: "The requisite finding of necessity must of course be a case-specific one: The trial court must hear evidence and determine whether use

of the one-way closed circuit television procedure is necessary to protect the welfare of the particular child witness who seeks to testify. [Citations.] The trial court must also find that the child witness would be traumatized, not by the courtroom generally, but by *the presence of the defendant*. [Citations.] Denial of face-to-face confrontation is not needed to further the state interest in protecting the child witness from trauma unless it is *the presence of the defendant* that causes the trauma. . . . Finally, the trial court must find that the emotional distress suffered by the child witness in the presence of the defendant is more than *de minimis*, i.e., more than 'mere nervousness or excitement or some reluctance to testify,' [citations]." (*Maryland v. Craig, supra*, 497 U.S. at pp. 855-856 [110 S.Ct. at p. 3169], all except latter italics added.) The court determined that "the Maryland statute, which requires a determination that the child witness will suffer 'serious emotional distress such that the child cannot reasonably communicate,' § 9-102(a)(1)(ii), clearly suffices to meet constitutional standards." (*Id.* at p. 856.) It declined to decide the minimum showing of emotional trauma required to meet constitutional standards. (*Ibid.*)

In a subsequent California case, an appellate court considered whether the trial court had infringed upon a defendant's right to confrontation by allowing the prosecutor to examine a child witness from a position that allowed the child to look away from the defense table so she would not have to look at defendant. (*People v. Sharp* (1994) 29 Cal.App.4th 1772, 1778, 1784 [36 Cal.Rptr.2d 117].) The court noted that "the only limitation on appellant's right to confront [the alleged child victim] was that he did not have a full, frontal view of her face." (*Id.* at p. 1783.) The court found that this minor interference did not impermissibly impair defendant's right to face-to-face confrontation when weighed against the state's interests in obtaining a complete and accurate account and in protecting the young witness from unnecessary emotional trauma. (*Id.* at pp. 1784-1785.) The court reasoned: "[T]he situation in this case is not materially different from one in which a witness might stare at the floor, or turn her head away from the defendant while testifying. In such a case, '[t]he Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; [the witness] may studiously look elsewhere.' (*Coy v. Iowa, supra*, 487 U.S. at p. 1019 [101 L.Ed.2d at p. 866].)" (*Id.* at p. 1782.)

In a recent California case, *People v. Williams* (2002) 102 Cal.App.4th 995 [125 Cal.Rptr.2d 884], an appellate court rejected the defendant's contention that he had been denied his rights to confront witnesses, to be present at trial and to due process when the trial court allowed the prosecution to present the testimony of an extremely distraught adult victim by means by means of

videotaped examination in lieu of a live examination during trial. (*Id.* at pp. 997-998.) The victim's psychologist opined at a hearing that the victim "would not be able to testify in the courtroom situation where all parties were present" because "[t]he panic, anxiety and fear would overwhelm her." (*Id.* at p. 1005.) The victim was examined in courtroom out of the presence of the jury and the defendant. (*Id.* at pp. 998, 1006.) Defendant heard the victim's testimony from a wired detention cell and defense counsel was able to go to the detention cell and confer with appellant before ending his cross-examination. (*Id.* at p. 1006.) "The videotape was thereafter played for the jury with appellant present in the courtroom. The jury was not permitted to know that the witness was unable to testify in front of appellant." (*Ibid.*)

We turn to the case before us. Here, as in *Maryland v. Craig, supra,* 497 U.S. 836, most of the features of cross-examination were preserved.[2] However, the present case, unlike *Maryland v. Craig* and *People v. Sharp, supra,* 29 Cal.App.4th 1772, does not involve the "State's traditional and ' "transcendent interest in protecting the welfare of children." ' " (*Maryland v. Craig, supra,* 497 U.S. at p. 855 [110 S.Ct. at p. 3168].) Neither the court in *People v. Williams, supra,* 102 Cal.App.4th 995 nor the People in this case have identified any authority recognizing or establishing that the state has "transcendent" or "compelling" interest in protecting adult victims of sex crimes from further psychological trauma that might result from testifying face-to-face with a defendant. Moreover, the trial court in this case was not relying upon the state's interest in protecting adult victims but, instead, predicated its ruling on the state's interest in ascertaining the truth. (See § 1044; see also Evid. Code, § 765, subd. (a).)[3] As articulated in *Coy,* the governmental interest in discovering the truth historically and traditionally cuts the other way.

In any event, the court in this case consented to the prosecution's request to use the one-way glass without holding an evidentiary hearing to determine whether, and to what degree, the testifying victim's apparent anxiety was

---

[2]The victim testified under oath in a public courtroom during trial, which presumably conveyed to the witness the solemnity of her obligation to tell the truth. (See Evid. Code, § 710; Code Civ. Proc., § 2094.) The jury was able to observe the witness's demeanor as she testified. The defendant was present, was able to observe the witness, and had the opportunity to fully cross-examine her.

[3]"It shall be the duty of the judge to control all proceedings during the trial, and to limit the introduction of evidence and the argument of counsel to relevant and material matters, with a view to the expeditious and effective ascertainment of the truth regarding the matters involved." (§ 1044.) "The court shall exercise reasonable control over the mode of interrogation of a witness so as to make such interrogation as rapid, as distinct, and as effective for the ascertainment of the truth, as may be, and to protect the witness from undue harassment or embarrassment." (Evid. Code, § 765, subd. (a).)

due to the defendant's presence rather than, for instance, the witness's general emotional fragility or the trauma of testifying in court or revisiting a past experience the witness would rather not recall. Even assuming that, in an appropriate case, the court might allow a testifying adult victim, who would otherwise be traumatized, to use a one-way screen to avoid seeing a defendant without violating the right of confrontation, we do not think a court may do so without making the necessary factual findings based upon evidence. In other words, a court may not, as the court did in this case, dispense with complete face-to-face confrontation merely upon a prosecutor's unsworn representation that defendant's presence was part of a distraught adult witness's problem. In our view, the court's ruling was not based upon an adequate "case-specific finding of necessity." (*Maryland v. Craig, supra,* 497 U.S. at p. 855 [110 S.Ct. at pp. 3168-3169].) We are unable to say that the error was harmless beyond a reasonable doubt (*Chapman v. California* (1967) 386 U.S. 18, 24 [87 S.Ct. 824, 828, 17 L.Ed.2d 705, 24 A.L.R.3d 1065]), especially since the pivotal issue was the alleged victim's credibility.

Although we are aware of the due process concerns raised by use of the one-way glass, we do not reach this question given our conclusion that such procedure violated defendant's constitutional right to confrontation.[4]

The judgment is reversed.

Rushing, P. J., and Premo, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 16, 2003. Brown, J., did not participate therein. Baxter, J., and Moreno, J., were of the opinion that the petition should be granted.

---

[4]Given our conclusion and disposition, we also do not reach defendant's remaining contentions.