SLOUGH, J., Dissenting and Concurring.
I respectfully disagree with the majority's conclusion the accommodation during F.R.'s testimony did not violate Arredondo's Sixth Amendment right to face-to-face confrontation. The majority opinion breaks with established Sixth Amendment law. It is the first California appellate decision to approve the use of a physical barrier accommodation, as well as the first to invade the right to face-to-face confrontation to protect a non-disabled adult witness. Potentially more problematic, the majority infers and upholds a finding of necessity based on the slightest evidence I have found in our case law.
The relevant facts from trial span a mere three and a half pages of transcript, from which we can glean only that the court allowed an 18-year-old witness-who already had a support person-to testify behind a monitor that entirely blocked defendant's view of her and vice versa. The court did so to make the witness "more comfortable" because she had become emotional when taking the stand. However, the court did not hear evidence from anyone-medical professionals, for example, or even simply the witness herself-as to the cause and degree of her distress, and the record does not support an implied finding the distress was severe enough to warrant such an invasive accommodation. As I will explain, the trial court's handling of this situation did not provide a sound basis for depriving Arredondo of his constitutional right.
A defendant's Sixth Amendment right to look his accuser in the face and have his accuser do the same originates from "something deep in human nature that regards face-to-face confrontation ... as 'essential to a fair trial.' " ( Coy v. Iowa (1988) 487 U.S. 1012, 1017, 108 S.Ct. 2798, 101 L.Ed.2d 857 ( Coy ).) In Coy , the trial court permitted the use of a screen that allowed the *982 defendant "dimly to perceive" the two 13-year-old witnesses and entirely blocked their view of him. The United States Supreme Court found the physical barrier unconstitutional, stating it was "difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter." ( Id . at p. 1020, 108 S.Ct. 2798.)
Two years later, in Maryland v. Craig (1990) 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 ( Craig ), the Supreme Court created a narrow exception to the prohibition against accommodations eliminating face-to-face confrontation. The exception applies when the trial court has "hear[d] evidence" and made "a case-specific finding" that a child witness would be "traumatized" if made to confront the defendant *70 face-to-face in court. ( Id. at pp. 855-856, 858, 110 S.Ct. 3157.) The emotional distress must be severe ; anxiety or reluctance to testify is not enough. ( Ibid. ) Additionally, although the accommodation will eliminate face-to-face confrontation, it must otherwise assure the testimony is reliable by preserving the other aspects of confrontation, which include a defendant's ability to view a witness's demeanor as he or she testifies. ( Id. at p. 851, 110 S.Ct. 3157.) This aspect is crucial. The ability to view the witness's demeanor "not only permit[s] a defendant to 'confound and undo the false accuser, or reveal the child coached by a malevolent adult,' [citation], but may well aid a defendant in eliciting favorable testimony from the child witness." ( Ibid . )
Accommodations upheld under Craig have ranged from a live closed-circuit television feed (where the defendant can watch the witness as she testifies and has real-time communication with counsel) to allowing the witness to sit angled to the side while on the stand and thus not face the defendant directly. On the spectrum of accommodations, placing an opaque, physical barrier between the defendant and witness is the most invasive to the face-to-face confrontation right. ( Craig , supra , 497 U.S. at p. 851, 110 S.Ct. 3157 ; Coy , supra , 487 U.S. at pp. 1019-1020, 108 S.Ct. 2798.)
Before today, only one California decision has upheld the use of an accommodation eliminating a defendant's ability to observe witness demeanor, and that case involved a physically and mentally disabled witness who-according to the testimony of medical professionals -would become suicidal if made to face the defendant in court. ( People v. Williams (2002) 102 Cal.App.4th 995, 125 Cal.Rptr.2d 884 ( Williams ).) Here, the trial court opted for an opaque physical barrier without even attempting to ensure the adult witness truly required it, and the majority, remarkably, finds no constitutional violation. In no other case has a court upheld an accommodation as invasive as the one used here on the basis of such slight evidence of necessity.
Because I believe the record discloses a clear violation of Arredondo's face-to-face confrontation rights, and that violation was not harmless beyond a *983 reasonable doubt, I would reverse the convictions on counts 3, 4, and 5-the counts for sexual assaults against F.R. However, because I concur with the majority's conclusions regarding the remainder of Arredondo's claims of error, I would otherwise affirm the judgment, leaving Arredondo sentenced to 200 years to life (for counts 2, 6-11, 13) plus the determinate term the trial court imposes on remand (for counts 1, 12, 14).
A. The Sixth Amendment Right to Face-to-Face Confrontation
In Herbert v. Superior Court (1981) 117 Cal.App.3d 661, 172 Cal.Rptr. 850 ( Herbert ), the Third District held the trial court violated defendant's confrontation right when it moved his seat in the courtroom so he could not see the 5-year-old witness during her testimony and vice versa. ( Id. at p. 665, 172 Cal.Rptr. 850.) The trial court had allowed the accommodation based on its "conclu[sion] the child 'was disturbed by the number of people in the courtroom and in particular with the presence of the defendant.' " ( Id. at p. 664, 172 Cal.Rptr. 850.) The Herbert court held, "By allowing the child to testify against defendant without having to look at him or be looked at by him, the trial court not only denied defendant the right of confrontation but also foreclosed an effective method for determining veracity." ( Id. at p. 668, 172 Cal.Rptr. 850.) The court explained, "The historical concept of the right of confrontation has included the right to see one's accusers face-to-face, *71 thereby giving the fact-finder the opportunity of weighing the demeanor of the accused when forced to make his or her accusation before the one person who knows if the witness is truthful." ( Id. at p. 671, 172 Cal.Rptr. 850.) In finding the accommodation unconstitutional, the court observed, "We have no specific record of the child's conduct which motivated the lower court to devise the seating arrangement in question. We have only the subjective observations of the court put into the record to justify and explain the unorthodox courtroom arrangement . We have no record of any intimidating action by the defendant." ( Id. at p. 670, 172 Cal.Rptr. 850, italics added.)
In Coy , the Supreme Court struck down an accommodation similar to-but still less invasive than-the one used here. The trial court had allowed a "screen to be placed between appellant and the witness stand during the [two 13-year-old] girls' testimony. After certain lighting adjustments in the courtroom, the screen would enable appellant dimly to perceive the witnesses, but the witnesses to see him not at all." ( Coy , supra , 487 U.S. at pp. 1014-1015, 108 S.Ct. 2798.) "The screen ... was specifically designed to enable the complaining witnesses to avoid viewing appellant as they gave their testimony, and the record indicates that it was successful in this objective. It is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter ." ( Id . at p. 1020, 108 S.Ct. 2798, italics added.) Like the appellate court in Herbert , the Supreme Court found it troubling there "ha[d]
*984 been no individualized findings that these particular witnesses needed special protection." ( Coy , at p. 1021, 108 S.Ct. 2798.) The Supreme Court left "for another day ... the question whether any exceptions exist" to the right to face-to-face confrontation. ( Ibid. )
A few years later, the Supreme Court identified one such exception, a narrow one-"the State's traditional and transcendent interest in protecting the welfare of children" may be "sufficiently important to outweigh, at least in some cases, a defendant's right to face his or her accusers in court." ( Craig , supra , 497 U.S. at pp. 853, 855, 110 S.Ct. 3157, internal quotations omitted.) In Craig , the trial court had applied to four young witnesses a Maryland statute authorizing a closed-circuit television procedure for examining children in a separate room while the judge, jury, and defendant remained in the courtroom. ( Id. at pp. 841, 843, 110 S.Ct. 3157.) The trial court found the accommodation necessary after the prosecution presented expert testimony the child witnesses, one of whom was six years old, "would suffer 'serious emotional distress such that [they could not] reasonably communicate.' " ( Id. at p. 842, 110 S.Ct. 3157, brackets in original.) In upholding the accommodation, the Supreme Court announced a new rule: "[W]e hold that, if the State makes an adequate showing of necessity, the state interest in protecting child witnesses from the trauma of testifying in a child abuse case is sufficiently important to justify the use of a special procedure that permits a child witness in such cases to testify at trial against a defendant in the absence of face-to-face confrontation with the defendant." ( Id. at p. 855, 110 S.Ct. 3157, italics added.)
Craig established a two-part test. First, "[t]he trial court must hear evidence and determine whether" the accommodation "is necessary to protect the welfare of the particular child witness who seeks to testify." ( Craig , supra , 497 U.S. at p. 855, 110 S.Ct. 3157, italics added.) The trial court must then make a "case-specific finding" that "the child witness would be traumatized " if made to face the defendant in court. ( Id. at pp. 855-856, 860, 110 S.Ct. 3157, italics added.) De minimis "emotional *72 distress" like "nervousness or excitement or some reluctance to testify" will not suffice. ( Id. at pp. 841-842, 855-856, 860, 110 S.Ct. 3157.)
Second, because it will invade the right to face-to-face confrontation, the accommodation must preserve the confrontation right's other "safeguards of reliability"-"oath, cross-examination, and observation of the witness' demeanor." ( Craig , supra , 497 U.S. at p. 851, 110 S.Ct. 3157.) The Supreme Court approved of Maryland's statutory procedure because it ensured that "the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the demeanor (and body) of the witness as he or she testifies." ( Ibid. , italics added.)
California has a statute similar to Maryland's. Penal Code section 1347 authorizes the use of a closed-circuit television procedure for examining a *985 child 13 years of age or younger . ( Pen. Code, § 1347, subd. (b).) Penal Code section 1347 states it is intended "to provide the court with discretion to employ alternative court procedures to protect the rights of a child witness, the rights of the defendant, and the integrity of the judicial process ... This discretion is intended to be used selectively when the facts and circumstances in an individual case present compelling evidence of the need to use these alternative procedures." ( Pen. Code, § 1347, subd. (a), italics added.) A court may not order the use of the closed circuit procedure unless it finds (1) "[t]he impact on the minor ... is shown by clear and convincing evidence to be so substantial as to make the minor unavailable as a witness unless closed-circuit testimony is used" and (2) "[t]he equipment available for use of closed-circuit television would accurately communicate the image and demeanor of the minor to the judge, jury, defendant or defendants , and attorneys." ( Pen. Code, § 1347, subd. (b), italics added.) Penal Code section 1346 defines "unavailable" as suffering "emotional trauma" so severe "that the victim is medically unavailable or otherwise unavailable within the meaning of Section 240 of the Evidence Code." ( Pen. Code, § 1346, subd. (d).)
Penal Code section 1347 satisfies both parts of Craig 's test because it requires (1) a finding that the procedure is necessary to prevent emotional trauma so severe the child would be rendered incommunicative and (2) a finding that the procedure does not invade the defendant's ability to view the witness as the witness testifies . Indeed, the Supreme Court appeared to approve Penal Code section 1347 in Craig , citing to it as one of eight state statutes offering a "two-way" television feed that gives each room a view of the other. ( Craig , supra , 497 U.S. at p. 854, fn. 4, 110 S.Ct. 3157.)
The foregoing authority is entirely focused on child witnesses. By its terms, Craig does not apply to adult witnesses. Instead, the Supreme Court was concerned with the unique issues child witnesses pose. It cited to a "growing body of academic literature documenting the psychological trauma suffered by child abuse victims who must testify in court" and observed that a majority of states have statutory procedures designed to protect child witnesses from the emotional distress of testifying about sexual abuse in court.[1] ( Craig , supra , 497 U.S. at pp. 853-855, 110 S.Ct. 3157.) Courts have traditionally afforded children greater protections precisely because of their vulnerability and lack of experience. ( *73 Globe Newspaper Co. v. Superior Court of Norfolk County (1982) 457 U.S. 596, 607, 102 S.Ct. 2613, 73 L.Ed.2d 248 ; see also New York v. Ferber (1982) 458 U.S. 747, 756-757, 102 S.Ct. 3348, 73 L.Ed.2d 1113 ; FCC v. Pacifica Foundation (1978) 438 U.S. 726, 749-750, 98 S.Ct. 3026, 57 L.Ed.2d 1073 ; *986 Ginsberg v. New York (1968) 390 U.S. 629, 640, 88 S.Ct. 1274, 20 L.Ed.2d 195 ; Prince v. Massachusetts (1944) 321 U.S. 158, 168, 64 S.Ct. 438, 88 L.Ed. 645.) As the Supreme Court explained in Craig : "[A] State's interest in 'the protection of minor victims of sex crimes from further trauma and embarrassment' is a 'compelling' one. '[W]e have sustained legislation aimed at protecting the physical and emotional well-being of youth even when the laws have operated in the sensitive area of constitutionally protected rights.' ... [We have] held that a State's interest in the physical and psychological well-being of a minor victim was sufficiently weighty to justify depriving the press and public of their constitutional right to attend criminal trials, where the trial court makes a case-specific finding that closure of the trial is necessary to protect the welfare of the minor." ( Craig , at p. 852, 110 S.Ct. 3157.)
The question we face in this appeal is whether, under Craig and its progeny, the record supports accommodating an adult witness by placing an opaque barrier between her and her accused abuser. In upholding the accommodation, the majority relies almost entirely on People v. Sharp (1994) 29 Cal.App.4th 1772, 36 Cal.Rptr.2d 117 ( Sharp ) and People v. Gonzales (2012) 54 Cal.4th 1234, 144 Cal.Rptr.3d 757, 281 P.3d 834 ( Gonzales ). I find those cases unhelpful. First, they involve child witnesses, not adult witnesses. Second, the accommodations in those cases preserved the defendants' ability to view the witnesses as they testified. Third, both cases involved much more evidence of the need for the accommodation. As a result, I do not believe Sharp and Gonzales provide the majority a sound basis for its decision.
In Sharp , the trial court allowed the young witness (who was 8 or 9 years old) to turn to the side and face the jury while testifying. ( Sharp , supra , 29 Cal.App.4th at p. 1783, 36 Cal.Rptr.2d 117.) Before the accommodation, the witness was becoming incommunicative on the stand, suffering inexplicable memory lapses about incidents she had previously consistently reported, and providing inconsistent, evasive, and confused testimony. ( Id. at pp. 1783-1784, 36 Cal.Rptr.2d 117.) Even with the accommodation, the defendant still had a view of the witness's face, just not a "full, frontal view." ( Ibid. ) The Sharp court described the accommodation as causing "only the most minimal interference with appellant's right to confront his accuser" precisely because "[n]o physical barrier or screen was erected between appellant and the witnesses as they testified ." ( Ibid ., italics added. ) Although the trial court had not made any explicit findings of necessity, the appellate court inferred such a finding based on its conclusion the trial transcript demonstrated the witness was "experiencing considerable distress." ( Id. at p. 1783, 36 Cal.Rptr.2d 117.)
In Gonzales , the trial court allowed a similar accommodation for the eight-year-old boy who was called upon to testify against his parents in a first *987 degree torture-murder case. ( Gonzales , supra , 54 Cal.4th at pp. 1242, 1247, 1261, 144 Cal.Rptr.3d 757, 281 P.3d 834.) At the preliminary hearing, the child testified while "seated at an angle, not directly facing the defendants" and the video of his testimony was played during trial under Evidence Code section 1291, which provides a hearsay exception for former testimony when the witness is unavailable. ( Gonzales , at pp. 1261, 1265, 144 Cal.Rptr.3d 757, 281 P.3d 834.) On appeal, the child's father *74 asserted the arrangement at the preliminary hearing violated his confrontation rights but "[did] not challenge the trial court's ruling that [his son] was unavailable because of the trauma that he would suffer if made to testify against his parents at their capital trials." ( Id. at pp. 1261, 1268, 144 Cal.Rptr.3d 757, 281 P.3d 834.)
More on point is People v. Murphy (2003) 107 Cal.App.4th 1150, 132 Cal.Rptr.2d 688 ( Murphy ), which involves an adult witness and a physical barrier accommodation. In Murphy , the trial court permitted the 31-year-old witness to testify about the defendant's sexual abuse behind a one-way screen that blocked her view of the defendant but allowed everyone else in the courtroom, including the defendant, to see her. ( Id. at p. 1152, 132 Cal.Rptr.2d 688.) The record revealed the witness had testified for an afternoon before the trial court permitted the accommodation, which the court found necessary based on its observation of the witness: " 'To say that the victim in this case while testifying is severely emotionally distraught is like saying the ocean is rather damp. She has been engaging in a hyperventilation that we have heard described in other contexts by her cousin. She has been making marked spasmodic motions of her head and neck relating to her breathing abilities, I suspect. She has been crying and sobbing. She has been making 'keening' type noises that at times make it difficult to hear her testimony. [¶] As the record will reflect, we took one or more breaks yesterday just in an effort to try to allow her to feel more comfortable. Again, that's sort of an understatement as well. [¶] A reading of the preliminary hearing transcript would suggest that during that hearing paramedics were required to treat her on the same sort of issues that she has.' " ( Ibid. )
Despite the trial court's explanation, the Second District concluded the accommodation was unconstitutional because (1) it was not clear the exception in Craig could ever appropriately apply to adults and (2) the trial court had not made the case-specific findings required in Craig . The Murphy court stated, "Even assuming that, in an appropriate case, the court might allow a testifying adult victim, who would otherwise be traumatized, to use a one-way screen to avoid seeing a defendant without violating the right of confrontation, we do not think a court may do so without making the necessary factual findings based upon evidence." ( Murphy , supra , 107 Cal.App.4th at p. 1158, 132 Cal.Rptr.2d 688.) The court concluded the accommodation failed to satisfy the first part of the Craig test because the trial court had failed to "hold[ ] an evidentiary hearing to determine whether, and to what degree , the testifying victim's apparent anxiety was due to the defendant's presence *988 rather than, for instance, the witness's general emotional fragility or the trauma of testifying in court or revisiting a past experience the witness would rather not recall." ( Murphy , at pp. 1157-1158, 132 Cal.Rptr.2d 688, italics added.)
In my view, Murphy provides guidance for analyzing the accommodation in this case and demonstrates how the trial court failed to properly safeguard Arredondo's confrontation right. The trial court sanctioned a more invasive physical barrier than the one struck down in Murphy on less compelling evidence of trauma.
The majority provides no authority to suggest the state has an interest in protecting adult witnesses that is similarly "traditional and transcendent" as the state's interest in protecting child witnesses. ( Craig , supra , 497 U.S. at pp. 855-856, 110 S.Ct. 3157.) While I agree trial courts may be justified in accommodating *75 some adult witnesses in some circumstances despite treading on the right to face-to-face confrontation (see Williams , supra , 102 Cal.App.4th 995, 125 Cal.Rptr.2d 884 ), I would not go so far as the majority, which seems to say as long as the abuse occurred when the witness was a child, Craig does apply. (Maj. opn. ante , at p. 62[arguing the state "has an interest in protecting the former child from the trauma of face-to-face confrontation"].)
There are important reasons to accommodate child witnesses that do not apply to adults. The majority's own case law acknowledges this fact. "When the victim witness is a young child, the risks of damage to both the witness and the truth-seeking function can be especially great." ( Sharp , supra , 29 Cal.App.4th at p. 1786, 36 Cal.Rptr.2d 117, citing Cecchettini-Whaley, Children as Witnesses After Maryland v. Craig (1992) 65 So.Cal.L.Rev. 1993, 2005-2018 (Cecchettini-Whaley).) Psychological studies have shown "the distress the child would experience would be worse than that of a testifying adult" as "[c]hildren ... have not yet developed to the point that they can understand the legal system and its procedural requirements, including the necessity of facing those who have tormented them and of having their own credibility put on trial." (Cecchettini-Whaley [*2006].) "[T]here are several reasons to predict greater stress for children. The situation will be more novel and less predictable for the child than for adults; the sight of the defendant may be particularly disturbing because the child might believe that the defendant will retaliate against the child in the courtroom; or the child may think that he or she, rather than the defendant, will be sent to jail or taken from home." (Goodman & Helgeson, Child Sexual Assault: Children's Memory and the Law (1985) 40 U. Miami L.Rev. 181, 203.)
Williams is the only California decision to uphold an accommodation eliminating a defendant's ability to see an adult witness as she testified. ( Williams , supra , 102 Cal.App.4th 995, 125 Cal.Rptr.2d 884.) However, the facts of that case are *989 extraordinary and, for that reason, I do not think it provides a sound basis for approving the accommodation used here. The witness in Williams was a physically and mentally disabled adult who had been called to testify against her abusive boyfriend. ( Id . at pp. 998-999, 125 Cal.Rptr.2d 884.) At the hearing on whether she needed accommodation, her psychotherapist and physician testified she would become suicidal and incommunicative if forced to face the defendant in court. ( Id. at pp. 998, 1004-1006, 125 Cal.Rptr.2d 884.) To avoid this likelihood of "grave harm," the trial court permitted the witness to testify in another room while the defendant listened from a detention cell and was able to confer with his counsel during cross-examination, though he could not see her. ( Id. at pp. 1006, 1008, 125 Cal.Rptr.2d 884.) The Second District approved the extension of Craig 's narrow exception to the disabled adult witness but only because of the compelling evidence of necessity to protect a vulnerable witness. ( Williams , at p. 1008, 125 Cal.Rptr.2d 884.)
Our Sixth Amendment case law is founded on the widely recognized principle that children are especially vulnerable and the state has a compelling interest in assuring they are protected when called upon to testify against their abusers. As a general matter, the law does not find it necessary to protect adult witnesses to the same degree. Williams provides an example of when it may be proper to consider an adult witness vulnerable, but the vulnerability in that case was both extreme and extremely developed. Here, with insufficient support from the record, the majority concludes *76 our young adult witness was "no less vulnerable than a minor." (Maj. opn. ante , at p. 62.) As I will explain post , the little we know about F.R.'s reaction to taking the stand does not indicate she was as vulnerable as a young child. But even if the record did warrant an extension of the Craig exception, the trial court failed to satisfy both parts of the Craig test in selecting and implementing the accommodation.
B. The Accommodation Violated Arredondo's Confrontation Right
1. Factual background
The following exchange occurred during Arredondo's trial. F.R., the prosecution's 18-year-old victim witness, began to cry on the stand as she was being sworn in. The court asked her if she needed a moment and she responded, "I think so." The court then called a brief recess and told the prosecutor to have F.R.'s support person confer with F.R. and "let me know if she is able to proceed or ready to proceed and we will resume." The prosecutor said she would ask F.R. if she preferred the support person to sit behind her, and the court responded, "Oh, yes. Right. If there's something like that that you can do that would make her more comfortable, I'm fine with that."
*990 During the recess, the exhibit monitor in the witness box was repositioned and books placed underneath it so that it blocked F.R.'s view of Arredondo. Defense counsel objected to the accommodation on the ground F.R. was not a child witness and the monitor also blocked Arredondo's entire view of F.R. Counsel explained, "I object to my client being unable to view the witness as the witness testifies in that his knowledge of the witness would be able to assist counsel in her demeanor and looks, you know, as the quasi-parent. He is aware of how the witness looks when the witness is maybe not telling the truth or when the witness is feigning something. I don't have that knowledge. I have never seen this witness before. And [Arredondo] is unable to assist me in that regard because he is unable to see the witness."
The court responded, "for the record, when she first came in to take the oath, she was unable to proceed at that time. We took about a 15-minute break before she could get her emotions back in order." The court explained the monitor had been "repositioned so that the witness doesn't have to look at [Arredondo]." The court added that it believed the accommodation was "appropriate given her initial reaction."
Defense counsel responded F.R. had started crying when she "first came in ... before she was even able to see [Arredondo's] face. So [Arredondo] made no effort to look at her, intimidate her, or make any kind of eye contact or suggestive contact with her." The court replied, "I understand. I'm not casting any aspersions at this point. But it clearly affected her, and I think it's appropriate for the Court to take whatever small efforts the Court can make to make the witness more comfortable without infringing on [defendant's] constitutional rights, and I don't believe that his rights have been infringed on at this point." The monitor remained in place as 14-year-old A.J.R. and 13-year-old A.M.R. testified.
The preceding is the trial court's entire necessity analysis. The court observed F.R. had been emotionally "affected" upon taking the witness stand, then, for the stated purpose of making her "more comfortable," it permitted an accommodation that blocked her view of Arredondo and vice versa.
2. Analysis
We review claims of confrontation right violations de novo and apply the substantial evidence standard to the trial court's *77 factual findings-whether those findings are express or ones we infer from the record. ( People v. Lujan , supra , 211 Cal.App.4th at p. 1505, 150 Cal.Rptr.3d 727 ; People v. Powell (2011) 194 Cal.App.4th 1268, 1284, fn. 6, 124 Cal.Rptr.3d 214.) We defer to the trial court's determination of historical facts, but not its application of the constitutionally based legal test to those historical facts. ( People v. Giron-Chamul (2016) 245 Cal.App.4th 932, 964, 200 Cal.Rptr.3d 159.) *991 The cases do not explicitly address whether we review for substantial evidence to support necessity by clear and convincing evidence or a preponderance of the evidence. By statute, when the prosecution seeks to present the testimony of a witness who is 13 years old or younger by live television feed, the prosecution must present clear and convincing evidence of trauma so great as to render the witness unavailable. ( Pen. Code, § 1347.) By requiring clear and convincing evidence of serious emotional distress, the California Legislature "sought to make closed-circuit television testimony available to child witnesses under circumstances that, in the lawmakers' view, would preserve a defendant's Sixth Amendment confrontation rights as outlined in Craig ." ( People v. Powell , supra , 194 Cal.App.4th at p. 1282, 124 Cal.Rptr.3d 214.) In other words, in the case of younger witnesses and less invasive accommodations than the one used here, the Legislature views the heightened clear and convincing evidence standard necessary to protect a defendant's confrontation rights.
It remains an open question what standard of proof should apply when the witness is older than 13 or the accommodation is something other than a closed-circuit television procedure allowing the defendant to see the witness during examination. Arguably, where the witness is 18 years old and the accommodation is a physical barrier, the standard of proof should be at least as stringent as the standard in Penal Code section 1347. I note the issue, but need not resolve it because in my view this sparse record satisfies neither prong of the Craig test, even if I look for substantial evidence to support a finding based on the lower standard of proof.
a. Necessity
The trial court did not find the accommodation necessary, as required by Craig . The court should have determined whether F.R. would suffer severe emotional distress to the point of becoming incommunicative if made to confront Arredondo while testifying. Instead, the court determined F.R. was emotional or uncomfortable. The court compounded the error by failing to ascertain the cause and degree of F.R.'s discomfort. Indeed, the court observed F.R. was no longer emotional when the monitor was repositioned. On this record, concluding the accommodation was necessary is pure speculation.
A fair reading of the transcript shows it is highly likely the court could have accomplished its goal of making F.R. more comfortable with far less drastic measures, such as by simply repositioning her support person. In fact, the court seemed to be thinking along those very lines before it permitted the use of the monitor as a visual barrier. At the start of the recess, the court told the prosecutor it would be willing to let the support person sit behind F.R., *992 stating, "the law allows it." While I am sympathetic to the discomfort and distress a sexual assault victim like F.R. might feel when called to recount her experience in court, I believe Craig requires courts to ensure an accommodation is necessary before infringing upon a defendant's constitutional rights-and what the court did here is a far cry from that. *78 As the proceedings recounted above demonstrate, at no point did the court explicitly find that F.R. would be unable to reasonably communicate without a physical barrier between her and Arredondo. The majority faults Arredondo for the lack of an explicit finding, pointing out he failed to request a hearing on the need for the accommodation. (Maj. opn. ante , at pp. 61, 61-62.) However, it is the prosecution's burden to demonstrate the accommodation it seeks is necessary, not the defendant's burden to prove the accommodation is unnecessary. Coy and Craig speak to the protections our federal constitution affords criminal defendants and what trial courts-not the accused-must do to safeguard them. Arredondo satisfied his burden by objecting to the accommodation on the ground it violated his right to face-to-face confrontation.
As for an implied finding, the fact the court remarked F.R. had been "unable to proceed" when she took the stand and started crying is too slim a basis to support an inference that F.R. needed the accommodation. Indeed, the record reveals the recess actually had the intended effect of allowing F.R. to recompose herself. The court permitted the accommodation despite its observation that during the recess F.R. had been able to "get her emotions back in order."
Craig defines an accommodation as necessary when a child witness would be so "traumatized" by a defendant as to be unable to "reasonably communicate" if made to face him in court. ( Craig , supra , 497 U.S. at pp. 841-842, 855-856, 110 S.Ct. 3157.) Penal Code section 1347 defines necessity as "suffering serious emotional distress so [as to be] ... unavailable as a witness." ( Pen. Code, § 1347, subd. (b)(2)(A).) In my view, there is simply nothing in this record to support such a finding. To the contrary, I believe the record shows the court did not understand the seriousness of its action. It characterized the accommodation as a "small effort ... to make the witness more comfortable."
Additionally, I believe the holding in Murphy shows why we should not infer necessity here. The witness's distress in Murphy was much more severe than F.R.'s. The trial court stated for the record that it had observed the witness hyperventilate, sob, make spasmodic motions with her head and neck, and utter "keening" noises that made it hard to hear her testimony. ( Murphy , supra , 107 Cal.App.4th at p. 1152, 132 Cal.Rptr.2d 688.) However, because the trial court did not request evidence to determine "to what degree" the witness's distress was due *993 to the defendant as opposed to "general emotional fragility," the appellate court refused to infer necessity from the record. ( Id . at pp. 1157-1158, 132 Cal.Rptr.2d 688.)
At most, our record supports a finding that F.R. cried as a result of seeing defendant in court. I say at most because there are other explanations for F.R.'s distress upon taking the stand, and the trial court made no effort to identify the precise reason for her discomfort. I find it significant that when it approved the accommodation, the trial court had already observed F.R. was "fairly immature" as the basis for allowing the prosecution to ask leading questions of her. Thus, on the limited record before us, there is no way to tell whether F.R. cried because she was scared of defendant or because, being somewhat immature for her age, she was reluctant to testify in court and revisit disturbing past experiences. (Cf. Murphy , supra , 107 Cal.App.4th at pp. 1157-1158, 132 Cal.Rptr.2d 688.)
The majority concludes the court must have found Arredondo to be the source of F.R.'s discomfort because the entire discussion *79 of the accommodation "was based on F.R. being too upset to testify because she had to face defendant." (Maj. opn. ante , at p. 59.) This reasoning is circular. The prosecution argued F.R. needed the accommodation because Arredondo made her uncomfortable, but counsel's representations are not evidence. As it is, we simply do not know why F.R. cried when she took the stand. It could be the sight of Arredondo made her distraught, but it could just as easily be she was nervous to testify about her sexual abuse. It was the prosecution's burden to prove Arredondo's presence caused the problem and the court's obligation to ensure it was proven. Both failed.
Finally, Sharp and Gonzales do not support inferring a finding of necessity, as the majority concludes. The Gonzales court had no occasion to analyze the trial court's necessity finding because, as noted above, the defendant did not challenge that finding on appeal. (Gonzales , supra , 54 Cal.4th at pp. 1261, 1268, 144 Cal.Rptr.3d 757, 281 P.3d 834.) Sharp is similarly unhelpful because the record itself demonstrated the child witness had attempted to testify but could not reasonably communicate. Our record contains no comparable evidence of "considerable distress" or inability to communicate. ( Sharp , supra , 29 Cal.App.4th at p. 1783, 36 Cal.Rptr.2d 117.)
b. Accommodation type
The accommodation also fails to satisfy the second part of the Craig test. A physical barrier blocking the defendant's and witness's views of one another is the most "obvious [and] damaging" type of accommodation. ( Coy , supra , 487 U.S. at p. 1020, 108 S.Ct. 2798.) As the Supreme Court has explained, the ability to view *994 the witness's demeanor allows the defendant to assess credibility and perhaps even " 'undo the false accuser, or reveal the child coached by a malevolent adult.' " ( Ibid . ; Craig , supra , 497 U.S. at p. 851, 110 S.Ct. 3157.) In a similar vein, "A witness 'may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts.' " ( Coy , at p. 1019, 108 S.Ct. 2798.)
Arredondo's inability to assess F.R.'s demeanor, and therefore credibility, as she testified is precisely why his counsel objected to the monitor setup. Because he occupied the role of F.R.'s stepfather, Arredondo knew her personality and mannerisms well and would be better able than his counsel to tell if she were being less than truthful.
The majority concludes the accommodation satisfied the second part of the Craig test because "F.R. testified under oath, subject to cross-examination, and the jury had an unobstructed view of [her] while she testified." (Maj. opn. ante , at p. 58.) However, as Coy and Craig make clear, it is the defendant's view of the witness (and vice versa) that is most crucial, not the jury's. ( Coy , supra , 487 U.S. at pp. 1015-1020, 108 S.Ct. 2798 ; Craig , supra , 497 U.S. at pp. 844, 846-847, 851, 110 S.Ct. 3157.)
At any rate, even with its clear view of F.R., the jury's ability to assess her demeanor was limited because she did not have to look at Arredondo while testifying. ( Craig , supra , 497 U.S. at p. 851, 110 S.Ct. 3157.) As the Supreme Court observed in Coy : "It is always more difficult to tell a lie about a person 'to his face' than 'behind his back.' In the former context, even if the lie is told, it will often be told less convincingly. The Confrontation Clause does not, of course, compel the witness to fix his eyes upon the defendant; he may studiously look elsewhere, but the trier of fact will draw its own conclusions." ( Coy , supra , 487 U.S. at p. 1019, 108 S.Ct. 2798.) The accommodation used here removed *80 that factor from the jury's consideration because it allowed F.R. to look straight ahead while testifying without having to face Arredondo.
The majority relies on Craig , Sharp , and Gonzales to uphold the physical barrier accommodation used here, but in those cases the courts upheld the accommodations at issue precisely because they did not obscure the defendant's view of the witness. In Craig , the Supreme Court endorsed the closed-circuit television procedure because the defendant retained the "ab [ility] to view (albeit by video monitor) the demeanor (and body) of the witness[es]" as [they] testified. ( Craig , supra , 497 U.S. at p. 851, 110 S.Ct. 3157.) In upholding the trial court's decision to let the witness look toward the jury while testifying, the Sharp court sanctioned the accommodation for causing "only *995 the most minimal interference with appellant's right to confront his accuser" because "[n]o physical barrier or screen was erected between appellant and the witnesses as they testified." ( Sharp , supra , 29 Cal.App.4th at p. 1783, 36 Cal.Rptr.2d 117.) The accommodation in Gonzales was just as minimal-the child witness was "seated at an angle, not directly facing the defendants." ( Gonzales , supra , 54 Cal.4th at p. 1265, 144 Cal.Rptr.3d 757, 281 P.3d 834.)
Disregarding those parts of Craig , Sharp , and Gonzales , the majority characterizes the screen placed in front of F.R. as "the most minimal intrusion possible on defendant's confrontation rights." (Maj. opn. ante , at p. 66.) There is no support in the case law for the claim that an opaque physical barrier blocking the defendant's and witness's views of one another is a minimal, let alone the most minimal, intrusion to face-to-face confrontation. As noted earlier, the Supreme Court has described such physical barriers as the most "obvious" and "damaging" violation of the face-to-face confrontation right. ( Coy , supra , 487 U.S. at p. 1020, 108 S.Ct. 2798.) However, the majority sees no problem with the screen because it was "part of the normal courtroom setting" and therefore it might not have been "obvious" to the jury that the screen was being used to keep F.R. and Arredondo from seeing one another. (Maj. opn. ante , at p. 67, fn. 8.) This endorsement stems from a misunderstanding of the Supreme Court's clear guidance that using any physical barrier is an obvious infringement of the face-to-face confrontation right.
The majority appears to read the Court as saying, so long as an accommodation is not obvious to the jury , its interference with the confrontation right is minimal. But this is not what the Coy court meant when it said: "It is difficult to imagine a more obvious or damaging violation of the defendant's right to a face-to-face encounter" than a "screen ... specifically designed to enable the complaining witnesses to avoid viewing appellant as they gave their testimony." ( Coy , supra , 487 U.S. at p. 1020, 108 S.Ct. 2798.) "Obvious," in that statement, modifies how conspicuous the constitutional error is to the reviewing court-it does not describe whether the accommodation jumps out at an observer of the events, like the jury. The critical point is that an accused must be able to observe the witness against him and assist his counsel in exploring the veracity and credibility of his accuser.
The majority is not mistaken, however, to recognize that the jury also has a critical role in this exchange. Jurors must be able to observe the witness and pass ultimate judgment on her veracity and credibility as tested by effective cross-examination. For this reason, it is relevant whether the accommodation is visible to the jury and in the forefront of jurors' minds as they hear the witness's testimony. An "obvious"
*81 barrier may rightly lead the jury to regard *996 the witness with more skepticism. But a "non-obvious" barrier, like the one here, is likely to mislead the jury into giving a witness the same credit she would be due if she confronted the accused face-to-face, thus exacerbating the harm to the defendant.
I recognize trial courts "are regularly called upon to make tough decisions about how to afford criminal defendants the full measure of procedural protections to which they are entitled under the confrontation clause, without unduly traumatizing victim witnesses whose contributions to the truth-seeking process are so vital." ( Sharp , supra , 29 Cal.App.4th at pp. 1785-1786, 36 Cal.Rptr.2d 117.) I am also mindful that "[t]rial courts also possess a constitutionally conferred, inherent authority to 'create new forms of procedures' in the gaps left unaddressed by statutes and the rules of court." ( Lujan , supra , 211 Cal.App.4th at p. 1507, 150 Cal.Rptr.3d 727.) But there are limits to the authority to resolve practical problems in conducting a trial. "[C]ourts must tread carefully when exercising their inherent authority to fashion new procedures. We may not sanction procedures of dubious constitutional validity." ( Ibid . )
Here, without any indication F.R. was traumatized to the point she would not be able to reasonably communicate, the trial court imposed the most drastic of all accommodations-it erected a "physical barrier or screen ... between appellant and the witnesses as they testified." ( Sharp , supra , 29 Cal.App.4th at p. 1783, 36 Cal.Rptr.2d 117.) I view this procedure as a clear violation of Arredondo's constitutional rights and therefore cannot agree with the majority view that the barrier was "far less intrusive than any other alternative procedure would have been." (Maj. opn. ante , at p. 66.) A survey of the various alternate procedures appellate courts have upheld reveals nothing as invasive to the face-to-face confrontation right as the accommodation used here. (See People v. Johns (1997) 56 Cal.App.4th 550, 556, 65 Cal.Rptr.2d 434 [allowing child's mother to sit next to him as a support person during testimony]; People v. Chenault (2014) 227 Cal.App.4th 1503, 1520, 175 Cal.Rptr.3d 1 [permitting two children to testify with a support dog]; Sharp , at pp. 1780-1786, 36 Cal.Rptr.2d 117 [allowing child witness to testify angled away from defendant]; In re Amber S. (1993) 15 Cal.App.4th 1260, 1266, 19 Cal.Rptr.2d 404 [permitting one-way, closed-circuit TV in juvenile proceedings where Penal Code section 1347 does not apply].) Indeed, as the majority acknowledges, other jurisdictions do not allow opaque barriers of any sort, regardless of size, shape, or what the jury may think of them. (Maj. opn. ante , at p. 67, fn. 8.)
The majority emphasizes its holding "is a narrow one ... based on the particular facts of this case." (Maj. opn. ante , at p. 63.) The majority explains, "[t]he older a child abuse victim is when called upon to testify about the abuse, the more difficult it will likely be for the state to make an *997 'adequate showing of necessity' for using an alternative procedure to face-to-face confrontation." (Ibid. ) I find no comfort in this reassurance precisely because my colleagues approve the accommodation here based on such slight evidence of necessity. Under today's holding, as long as a witness of any age becomes emotional or shows some reluctance to testify and the trial court notes for the record that she appears distressed, the court may allow a physical barrier to be erected between her and her accused without fear of reversal.
The procedure the Supreme Court approved in Craig requires more. The trial court must hear evidence and make a fact-specific finding of trauma before it permits *82 an accommodation invading the guarantee of face-to-face confrontation. ( Craig , supra , 497 U.S. at pp. 851, 855-856, 110 S.Ct. 3157.) The court in Sharp felt comfortable inferring such a finding from the record when the trial court failed to make an explicit finding. ( Sharp , supra , 29 Cal.App.4th at p. 1783, 36 Cal.Rptr.2d 117.) While I question whether it is appropriate to infer a finding of necessity given Craig 's holding, I believe it is unreasonable to do so on this record.
C. The Unconstitutional Accommodation for F.R. Was Prejudicial
The harmless-beyond-a-reasonable-doubt standard articulated in Chapman v. California (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 applies to violations of the confrontation right. (C raig , supra , 497 U.S. at p. 1021, 110 S.Ct. 3157.) In Coy , the Supreme Court explained how the standard applies in the specific context of face-to-face confrontation: "An assessment of harmlessness cannot include consideration of whether the witness' testimony would have been unchanged, or the jury's assessment unaltered, had there been confrontation; such an inquiry would obviously involve pure speculation, and harmlessness must therefore be determined on the basis of the remaining evidence ." ( Coy , supra , 487 U.S. at pp. 1021-1022, 108 S.Ct. 2798, italics added.) Here, because the evidence of the charged sexual assaults against F.R. came entirely from F.R.'s testimony, it follows that the violation was prejudicial.
The prosecution did not present medical or physical evidence of those assaults and none of the other witnesses provided corroborating testimony.[2] Accordingly, I would reverse Arredondo's convictions for the sexual assaults against F.R.-counts 3, 4, and 5.
*998 D. Arredondo Forfeited His Claim as to A.J.R. and A.M.R. and Did Not Receive Ineffective Assistance of Counsel
I agree with the majority that Arredondo forfeited his claim of constitutional violation with regard to the use of the monitor accommodation during A.J.R.'s and A.M.R.'s testimony. (Maj. opn. ante , at p. 67.) The decision whether to allow an accommodation is a witness-specific analysis and an objection with respect to one witness cannot stand as an objection regarding another. Additionally, it would not have been futile to object to using the monitor for A.J.R. and A.M.R. because the court based its use of the accommodation for F.R. on the fact she had become upset taking the stand. There is no evidence A.J.R. or A.M.R. had a similar reaction upon entering the courtroom, so it is possible the court would have granted a request to reposition the monitor for those witnesses.
I also agree with the majority that the failure to object did not constitute ineffective assistance of counsel. The majority cites as a reasonable tactical purpose for not objecting the possibility defense counsel believed the monitor would prevent A.J.R. and A.M.R. from becoming emotional as they testified and thereby potentially elicit sympathy from the jury. (Maj. opn. ante , at p. 62.) I believe a different or at least additional tactical decision may have been at play.
*83 The record reveals the monitor was returned to its original position after A.M.R. testified in the prosecution's case in chief, then moved back to the obstructing position during A.J.R.'s and F.R.'s testimony in the defense case. Just before calling A.J.R. and F.R. as witnesses, defense counsel submitted photographs of Arredondo's penis and elicited testimony from an investigator that it had a noticeable pattern of discoloration. Defense counsel's sole purpose for calling A.J.R. and F.R. to the stand was to ask them if they could describe Arredondo's penis, in the hope they would fail to describe the discoloration, raising doubt about their story. Given the awkward and uncomfortable subject matter, defense counsel may have calculated he was more likely to elicit helpful testimony from the girls if they were able to speak as if in a more clinical, less emotionally charged setting. Obscuring Arredondo behind a monitor might establish such conditions. I believe a defense attorney could reasonably make that tactical choice, so I cannot conclude defense counsel provided ineffective assistance. ( People v. Frye (1998) 18 Cal.4th 894, 979-980, 77 Cal.Rptr.2d 25, 959 P.2d 183.)
In summary, I would reverse Arredondo's convictions for counts 3, 4, and 5 and affirm the convictions for the remaining 11 counts (1, 2, 6-14) as well as the true finding the crimes were committed against more than one *999 victim ( Pen. Code, § 667.61, subd. (e)(4) ). This would leave Arredondo with a sentence of 200 years to life plus the determinate term the trial court imposes on remand.

The Second District extended the exception in Craig to apply to nonvictim child witnesses, but did so based on the same concerns over the particular vulnerability of children. (People v. Lujan (2012) 211 Cal.App.4th 1499, 1502, 150 Cal.Rptr.3d 727.)

M.C. did testify Arredondo touched both her own and F.R.'s buttocks on one occasion in July 2013. Had the prosecution included this incident in one of the counts related to F.R., I might find M.C.'s testimony sufficient evidence to conclude the constitutional violation did not prejudice Arredondo as to that count. However, the information included date ranges for each count, and all of the assaults against F.R. were alleged to have occurred between May 2004 and May 2011.